**INTERNAL REVENUE SERVICE,
Third-Party Plaintiff,**

v.

**John F. BLAIS, Third-Party Defendant.**

**Civ. A. No. 79–2413–K.**

United States District Court,
D. Massachusetts.

June 19, 1985.

Judgment June 25, 1985.

John F. Blaise, pro se.

Peter Sklarew, Trial Atty., Tax Div., Washington, D.C., for U.S.

Opinion

KEETON, District Judge.

This action involves the government's attempt to collect $3,032.07 plus interest from John F. Blais as a penalty for failure to collect and pay withholding taxes pursuant to 26 U.S.C. § 6672 (1982). This court's jurisdiction is based upon 28 U.S.C. §§ 1340, 1345 (1982) and 26 U.S.C. § 7402(a) (1982). The evidence was presented in a three day non-jury trial. In light of several issues of first impression presented by this case the parties were given time to submit post-trial briefs. Based upon the evidence and the case law, I conclude that judgment should be entered for the government.

I.

FACTUAL SUMMARY

In 1957 William Blais, the brother of defendant John Blais, incorporated Blais-Porter, Inc. (Blais-Porter), a Chevrolet dealership in Reading, Massachusetts. He operated Blais-Porter until the mid-1970s when he began to experience health problems. In early 1976 William Blais entered a hospital for an indefinite confinement. On March 27, 1976, John Blais visited his brother, William, and obtained from him a power of attorney. In the written power of attorney, William Blais specifically authorized John Blais "to act for me and in my name in any and all matters pertaining to me or to Blais Porter, Inc. Chevrolet to sign my name, transfer property, stock, or take any and all action in my name and or for me." *Power of Attorney* at 1 (Mar. 27, 1976) (Exhibit 7). Throughout this case, the parties have not challenged the validity of this power of attorney.

During 1975 and 1976, Blais-Porter experienced severe financial problems. The business was mismanaged and also was the target of fraud and corruption. At that time, the business was generally under the control of William Blais. When William Blais became ill, the business was operated by Richard Conway. During this time, Thomas Butcher, the comptroller, signed checks and prepared all the financial statements. After he received the power of attorney, John Blais took several steps to attempt to restore stability to Blais-Porter. He first attempted to transfer the General Motors franchise into his name so that it would not be cancelled. On April 23, 1976, John Blais entered the Blais-Porter premises and under the power of attorney began to supervise various operational aspects of the business. In May 1976 his name was added to the payroll of Blais-Porter as an employee. Throughout this period, Thomas Butcher continued to maintain the financial records of Blais-Porter.

In the second quarter of 1976, Blais-Porter failed to pay to the government the withholding taxes due upon its employees' payroll. Soon thereafter, the business went bankrupt. In this action the government seeks to recover the withholding taxes through the assertion of a statutory penalty for 100% of the liability. *See* 26 U.S.C. § 6672 (1982).

On December 19, 1977, the government assessed a § 6672 penalty against Thomas Butcher in the amount of $6,099.54. On February 21, 1978, the government satisfied the deficiency by imposing a tax lien on property owned by Butcher. On March

20, 1978, the government assessed a penalty of $6,099.54 against John Blais. On December 5, 1979, Butcher filed an action in this court for a refund of the amount collected. On February 12, 1980, the government filed a third-party complaint against John Blais. *See Wilkie v. United States,* 279 F.Supp. 671 (D.C.1968) (holding that third-party complaint is proper in § 6672 case). In 1982 the government settled its case with Butcher by returning $3,008.76 of the amount collected plus interest. The government continues to attempt to collect the remainder of the 100% penalty from John Blais.

## II.

### REASONABLENESS OF THE GOVERNMENT'S SETTLEMENT

Before reaching other issues in this case, I address an issue arising from the government's decision to return money already collected from Thomas Butcher, by way of settlement of his action for refund, and then to proceed against John Blais for a sum admittedly not collectible against him had the government retained the full sum initially collected from Butcher. As the trial progressed, I became concerned as to what issues might be presented by the government's conduct in settling with Butcher and proceeding with an action to collect from John Blais exactly (except for the adjustments to correct a clerical error) what the government paid back to Butcher in settlement. My concerns were enhanced when it became apparent that the case against John Blais was much more difficult to establish, both on the law and on the facts, than the case against Butcher.

■ Among the reasons for concern were the following. First, the government's key witness against John Blais was Thomas Butcher. Since, as factfinder, I was required to decide whether to credit Butcher's testimony at trial, I advised the government that I would require disclosure of the terms of its settlement with Butcher as a prerequisite to crediting his testimony

on sharply disputed issues. The terms of a settlement with a key witness are especially relevant where, as here, it appears that the government may have had other tax claims against Butcher arising out of his employment relationship with Blais-Porter. Especially if a "deal" had been made between the government and Butcher that involved claims beyond the 100% penalty, then as factfinder, I should evaluate the nature of the settlement and its impact on the credibility of evidence offered to support the government's claim of liability of John Blais. Second, I was concerned that the government's settlement with Thomas Butcher may have unfairly affected the rights of John Blais, apart from its bearing on credibility. By settling with one party, the government affected the rights of the other party because the 100% penalty under § 6672 is collected only once. *See Gens v. United States,* 615 F.2d 1335, 1339, 222 Ct.Cl. 407 (Ct.Cl.1980), *cert. denied,* 459 U.S. 906, 103 S.Ct. 209, 74 L.Ed.2d 167 (1982).

The government's response to my expressed concerns was twofold. Although evidence of the settlement was offered, the government insisted that it had no obligation to provide such evidence. Further, it argued that Congress had given it unlimited and unbridled discretion to settle with taxpayers. The government primarily challenges this court's subject matter jurisdiction to consider the settlement for any purpose. The government has maintained this position in its post-trial brief. I conclude that the government's position on this matter is incorrect.

■ Congress has entrusted the Department of the Treasury and derivatively the Internal Revenue Service with broad power to enforce our revenue laws. The ability of the government to collect each person's fair share of the federal burden is essential to any form of organized government. The power to collect, however, is not an unrestricted power. The government must abide by the laws of the United States including constitutional, statutory, and de-

cisional constraints against unequal treatment.

■ The government is given broad power to settle cases with some taxpayers while not settling with all. *See* 26 U.S.C. § 7122(a) (1982). One taxpayer cannot directly attack the settlement of the government with another taxpayer. Nevertheless, an unreasonable or preferential settlement with one among two or more persons claimed to be liable for a single 100% penalty may be relevant to the government's case against another of those persons.

■ The law abhors power without accountability. Unpoliced power invites abuse and corruption. When the government has the power to affect the rights of third persons, it cannot do so irresponsibly and wholly without accountability. In the case of § 6672, Congress gave the government the power to proceed against all or any of the responsible persons. A government decision, for example, to proceed against one person rather than another because it appears to be easier to collect from that person is a permissible decision. However, decisions must not be based upon invidious or legally improper criteria. Unqualified statements regarding governmental discretion to settle in cases in which the courts apparently had no contention before them that a settlement had adversely affected the interests of another taxpayer subject to the same 100% penalty under § 6672 should not be read as holdings to the contrary. *See, e.g., Gens,* 615 F.2d at 1340 (court "assum[ing] that the government has acted in good faith in such settlement, *there being nothing in the record to indicate otherwise.*" (emphasis added)).

The government relies upon *Lemieux v. United States,* 84–2 USTC 9806 (D.Conn. 1984), to support its contention that a taxpayer is never prejudiced by the government's settlement with another taxpayer. That decision involved a motion to dismiss a § 6672 case based upon the theory that the government had settled a portion of the claim with another taxpayer. The court approved the decision of the magistrate that no prejudice occurs in such circum-

stances because "the liability of each person against whom a penalty is assessed under section 6672 is 'separate and distinct.' " *Id.* I conclude that *Lemieux* is distinguishable from the present case. *Lemieux* involved a motion to dismiss a third-party complaint solely based upon the fact of settlement. And, it appears that the defendant in that case did not allege improper conduct in settlement, nor did the court discover the possibility of such conduct. I conclude that I should not read the court's comments about prejudice out of this context.

Settlement with one among several persons subject to the same 100% penalty presents distinctive issues not present in other familiar contexts of recognized governmental discretion. For example, prosecutorial discretion to abstain from prosecuting an offender, or to accept a plea and recommend a lenient sentence, does not have an automatic adverse impact against the rights of another individual involved in the incident. In the prosecutorial context there is no analogy to the concept of a single 100% penalty—that is, if the government collects the 100% penalty from one individual, as a matter of course, it will not assert the same 100% penalty against another taxpayer.

In the context of the 100% penalty claim, also, any suggestion that the government might be free, for example, to select one over another for settlement on grounds of race would not be taken seriously. This example, alone, refutes the contention that the government's decision to settle is immune from judicial inquiry. Thus, in some circumstances, a decision to settle with one for less than the 100% penalty and then proceed to collect the § 6672 tax from others may be improper. A taxpayer who alleges such preferential action should be allowed an opportunity to prove that an arbitrary settlement has adversely affected his rights. Such a problem may arise, for example, in a case in which the government has collected more than 100% of the tax liability from two or more taxpayers and then proceeds to refund the excess dispro-

portionately among the taxpayers. In such a case the government can no longer rely on collectibility as a justification for the refund allocation.

As noted above, after this issue surfaced during trial, the government introduced evidence of the settlement offer. *See Memorandum Re: Offer in Partial Compromise With Respect to Thomas Butcher* (Jan. 18, 1982) (Exhibit 11). I accept this evidence and find that it disclosed the true nature of the settlement even though the government's post-trial brief expressly refuses to discuss the circumstances of the settlement. I reject the position stated in that brief and accept the wiser judgment of the trial attorney to provide such evidence during trial. Had the evidence of the terms of the settlement been withheld, very likely I would have been compelled to enter judgment against the government.

■ Based upon the information received during trial, I find that the settlement was reasonable. Exhibit 11 is the government's pre-settlement memorandum. In this memorandum, the government attorney expressed the belief that the case against John Blais is much easier than the case against ·Thomas Butcher. Thus, the attorney recommended that the government settle with Butcher and proceed against John Blais for the remainder. Even though in retrospect the appraisal of the relative difficulty of the two claims appears to have been incorrect, I conclude that at that time this advice was reasonable (or, to state the point more precisely, was not unreasonable, that is, was not outside the range of choice as to which reasonable persons might differ). Having found the settlement to be reasonable, I do not find it a barrier to crediting the testimony of Thomas Butcher. Also, I reject the contention of John Blais that the settlement unfairly prejudiced his rights.

Given these findings and conclusions, I need not and do not examine issues as to what standard of evaluation a court should apply in determining whether the government settlement with one of two or more persons allegedly subject to the same 100%

penalty should bar or otherwise affect its claim against any other person in the group.

## III.

## LIABILITY UNDER SECTION 6672

■ Under § 6672,

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to the other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a) (1982). After the penalty is assessed under this section, the taxpayer has the burden of proving either that he was not a responsible person, or that the failure to pay the tax was not willful. *See United States v. Rexach*, 482 F.2d 10, 17 (1st Cir.), *cert. denied*, 414 U.S. 1039, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973). I address each of these requirements separately.

Before I address the merits, however, I note a peculiarity presented by the evidence in this case. The events at issue occurred over eight years ago and took place over a short span of time. Perhaps because of this lapse of time and the fact that a small amount of money is involved, the evidence presented at trial is inadequate to show a complete picture of the facts. The resolution of this case primarily depends upon my interpretation of the testimony of two witnesses both of whom have been less than candid with this court. The government offers the testimony and deposition of Thomas Butcher to support its contention that John Blais willfully failed to account for the withholding taxes. The testimony of Butcher at trial is in serious conflict with his deposition testimony. This may have resulted in part from Butcher's previous involvement in the case as a party, at the time his deposition was

taken and before the settlement, and in part from the strained relations between Butcher and John Blais. The case of John Blais as third-party defendant rests primarily upon his own testimony, and he is also representing himself in this matter. Blais' testimony is both confusing and replete with contradictions. Evaluating the evidence as factfinder, I place more weight upon documentary evidence than upon the conflicting testimony of the two principal witnesses.

### A. Was John Blais a Responsible Person?

The question whether John Blais was a responsible person within the meaning of § 6672 is a close and debatable one. The primary difficulty results from the fact that at all times John Blais was acting not for himself individually, but for his brother William Blais through a power of attorney. Under state law, a power of attorney creates the traditional principal/agent relationship. Generally, an agent who expressly acts for his principal is individually liable to third persons for his torts, even though committed within the scope of his authority as well as within the scope of his employment, but is not liable for his contracts made within the scope of his authority. The question whether John Blais, acting with power of attorney for William Blais, should be individually liable under § 6672 is difficult and is not addressed in controlling authority.

An examination of state law is not determinative of the question. As noted above, a third party who voluntarily deals with an agent who acts within the scope of his authority must accept the risk of enforcing the contract against the principal. A third party who is a victim of an agent's tortious actions, however, ordinarily may look to both the agent and the principal for recovery if at the time of the tortious act the agent was acting as a servant within the scope of his employment. In this case we are examining an agent and principal's liability for a civil tax penalty that is imposed with regard to "control" of finances and knowledge of the tax liability. One could argue that the relevance of control over finances makes his liability more analogous to that in contract than to that for tort. However, the purpose behind the statute is better served if the liability is analogized to tort. After all, the government does not choose to deal with the "responsible persons" who must account for the withholding taxes.

The statutory language and legislative history of § 6672 are also not determinative. One could argue that because the statute imposes individual liability for a corporate entity's failure to pay taxes without regard to official titles, the fact that the person is an agent is of no consequence to individual liability. On the other hand, one could reason from the Supreme Court decisions on the statute that § 6672 should be interpreted narrowly and that because a non-employee's financial interest in an enterprise is different from that of a controlling employee, no individual liability should attach. See Slodov v. United States, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978); United States v. Sotelo, 436 U.S. 268, 280 n. 13, 98 S.Ct. 1795, 1802 n. 13, 56 L.Ed.2d 275 (1978) (a responsible corporate officer, even without an ownership interest, "has a stake in 'the fruits of entrepreneurial success' and like a shareholder, may be tempted illegally to divert to the corporation those funds withheld from corporate employees for tax purposes."). By imposing liability individually upon the holder of a power of attorney, a court pierces another veil in the hierarchy of authority. Probably, the government could have proceeded against William Blais, for whom John Blais acted under the power of attorney. One might argue that the government should be limited to that choice rather than being allowed to proceed instead against the agent who holds the power of attorney.

The only cited precedent that is closely analogous is Builders Finance Co., Inc. v. United States, 352 F.Supp. 491 (E.D.Mich. 1970), aff'd sub nom. Mueller v. Nixon, 470 F.2d 1348 (6th Cir.1972), cert. denied, 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1001 (1973). (The claim in Peronto v. United

*States*, 70–1 USTC 9337 (M.D.Fl.1970), involved a power of attorney situation; however, the parties apparently did not contend that this relationship had affected the liability of the taxpayer.) In *Builders Finance Co., Inc.* the government attempted to collect a § 6672 penalty from an individual who had simply appeared on the premises of the ailing company as an agent of another company to protect its investment. The district court found the person liable as a responsible person irrespective of his agent status. The Sixth Circuit affirmed and held that the fact that the person was acting on behalf of another company would not shield him from liability.

■■■ Weighing the indeterminate precedents and the language of the statute, I conclude that the fact that John Blais was acting under a power of attorney the whole time that he was at Blais-Porter does not shield him from liability under § 6672. Section 6672—applying by its own terms to "[a]ny person required to collect, truthfully account for, and pay over"—requires an examination of the control of the person without regard to the source of his authority. This result is consistent with the decisions that have held that § 6672 was "designed to cut through the shield of organizational form and impose liability upon those actually responsible for the employer's failure to … pay over the taxes." *McGlothin v. United States*, 720 F.2d 6, 8 (6th Cir.1983) (quoting *Pacific National Ins. Co. v. United States*, 422 F.2d 26, 31 (9th Cir.), *cert. denied*, 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269 (1970)).

Given this resolution of the power of attorney issue, was John Blais a responsible person under the evidence in this case?

■■■ Courts have considered the following factors in determining whether a person should be considered a responsible person under § 6672: (1) the ability of the person to sign checks; (2) the identity of officers, directors, and shareholders; (3) the identity of individuals who prepared the tax returns; and (4) the identity of the individuals who were in control of the financial affairs of the corporation. *See Datlof v. United States*, 252 F.Supp., 11, 32–33 (E.D.Pa.), *aff'd*, 370 F.2d 655 (3d Cir.1966), *cert. denied*, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967). These factors are considered in order to ascertain whether the individual had responsibility to ensure that the taxes were paid.

■■■ In this case John Blais held a general power of attorney that essentially transferred all power that William Blais had in the corporation to John Blais. William Blais was the majority shareholder, the holder of the General Motors franchise, and the President of Blais-Porter. In these capacities he could essentially hire and fire employees at will and run the corporation. Although John Blais did not exercise all of this authority, he did freely enter the premises and act by virtue of the power of attorney many times during the second quarter. The evidence shows that, while on the premises, he hired and fired employees, bought and sold inventory, and made decisions to expend certain funds. As described below in the willfulness section, he did not become intimately involved with the financial affairs of the business. However, a responsible person need not actually prepare the tax returns, keep the records, pay the wages, or withhold the taxes. *See Hartman v. United States*, 538 F.2d 1336 (8th Cir.1976). It is important that through the power of attorney John Blais possessed the power to fire Thomas Butcher and run these affairs. *See Harrington v. United States*, 504 F.2d 1306, 1315 (1st Cir.1974). John Blais also loaned money to Blais-Porter throughout the second quarter. This control over the primary source of corporate funds indicates that John Blais exercised significant control over the financial aspects of the corporation. *See Sherman v. United States*, 490 F.Supp. 747 (E.D. Mich.1980). Thus, I conclude that John Blais was a responsible person under § 6672.

### B. Did John Blais Willfully Violate § 6672?

Section 6672 requires that the responsible person willfully fail to collect, account

for, and pay over taxes as required by law. To apply the "willfulness" requirement correctly, we must take account of three points essential to an understanding of the term as it is used in this context. First, willfulness is subjective—that is, it is a state of mind of awareness or knowledge—and not an objective standard that merely calls upon the factfinder to determine what a reasonably prudent person would have known. Second, the state of mind is one of knowledge of relevant consequences of an act or relevant circumstances in which the act occurs, and not merely knowledge of the act itself. Third, in order to explain precisely what state of mind is relevant in this context we must answer the question, "knowledge of what." The necessity for answering the question, "knowledge of what," is essential to defining any requirement of "knowledge." *See, e.g., Liparota v. United States,* —— U.S. ——, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) (majority and dissenting opinions agreeing that "knowingly" in federal statute governing food stamps fraud requires proof of a state of mind, but differing as to what must be found to have been known to satisfy that requirement). Of course, the factfinder may find from circumstantial evidence that the state of mind of knowledge of the relevant facts existed, *id.* 105 S.Ct. at 2093 n. 17, but a finding that the actor "should have known." does not satisfy the requirement of knowledge. In the present context, what is it that the factfinder must find that the responsible person knew when acting, in order to find that the person acted willfully?

It is often said that willful conduct denotes "intentional, knowing and voluntary acts." *See, e.g., Monday v. United States,* 421 F.2d 1210, 1215 (7th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). This statement serves well to make the point that "willfulness" is a state-of-mind standard, but it is only a shorthand expression rather than a full definition of the meaning of "willful" because it does not answer the question that remains—intentional, knowing, and voluntary in relation to what consequence of the acts, or

what facts or circumstances associated with them? In *Monday,* the Seventh Circuit addressed the issue whether the trial court erred in charging the jury that "reasonable cause" or "justifiable excuse" would negate willfulness, and in refusing to give the government's proffered instruction. That proffered instruction did say that "[a]n act is willful if it is voluntary, conscious, and intentional"; but it also added in the next sentence, "[i]f you find that ... [the responsible person] knowingly used available funds to prefer other creditors over the United States then you must find that he acted willfully." *Id.* at 1216. Thus, the proffered instruction did indicate the consequence or circumstance in relation to which the jury was to find whether or not the act was "voluntary, conscious, and intentional." In context, then, the Seventh Circuit's holding that the trial court erred, and its approval of the government's instruction, cannot properly be read as approving the notion that the state of mind of willfulness is defined in relation to acts alone, and without attention to whether the state of mind of the responsible person was intentional or voluntary in relation to some fact or circumstance relevant to the nonpayment of taxes rather than merely the act of paying some other bill.

■ A full answer to the question—knowledge of what act or consequence—is not essential to deciding the present case. Two parts of a full answer that are relevant here may be stated in the following way: The requirement of willfulness as that term is used in § 6672 is satisfied if it is found either (1) that the responsible person was aware that the taxes were unpaid and that he possessed the power to pay them with funds of the taxpayer entity, or (2) that the responsible person consciously disregarded known information about the tax obligation and thus acted in "reckless disregard" of the fact that the taxes were due and would not be paid.

*1. Did John Blais Have Knowledge That the Taxes Were Not Paid?*

In this case the willfulness issue is complicated by the contradictory testimony and

inconclusive documentary evidence. The government presents the testimony of Thomas Butcher as evidence of John Blais' knowledge that the taxes were not paid and that, when Blais authorized other payments, he knew sufficient money was not then available to pay the taxes. Butcher testified at trial that he told John Blais about the taxes in a meeting at the Blais home. I find it difficult to credit this testimony because Butcher also testified at his deposition that taxes were *not* discussed at this meeting. Butcher also testified at trial that he showed Blais a tax deficiency notice sent to the business during the second quarter. I find it difficult to credit this testimony without the proffer of a copy of such a notice. One may infer that the government would have access to notices that it sends to taxpayers.

John Blais denies any knowledge of the nonpayment of withholding taxes. An IRS agent reports, however, that during an interview John Blais answered yes to the following question: "Were meetings of any kind ever held by stockholders, officers, members, or other interested parties, regarding nonpayment of the tax liabilities?" *Exhibit 11* at 2 (Mar. 18, 1977). I have trouble crediting this document for two reasons. First, it is the agent's notation, not that of John Blais, and it appears in a document prepared in anticipation of litigation exclusively by the IRS agent, *see United States v. Baggot,* 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983). Also, the question is printed. Only the answer is hand lettered and by the agent. Second, in the same document, the agent has noted in hand lettering that John Blais said "At no time did I know the taxes were not paid + I was told by Butcher that they were paid." *Exhibit 11* at 4 (Mar. 18, 1977). I question why the IRS agent did not try to reconcile these two conflicting answers. My sense is that John Blais did not realize the import of the phrase at the end of the printed question that he is reported to have answered affirmatively. Weighing all of the evidence, I cannot find that John Blais had knowledge of the nonpayment of the withholding taxes.

### 2. Did John Blais Act in Reckless Disregard of Facts as to Whether the Taxes Were Paid?

The government also argues that John Blais acted willfully because of his reckless disregard for the truth as to whether taxes remained unpaid. This is a close and difficult issue. Although John Blais had the complete authority to operate Blais-Porter, he did not fully exercise it. He was more concerned with the General Motors franchise and selling cars than with the finances of the business. Through his inaction, he chose to leave the financial affairs of the business to the comptroller, Thomas Butcher, and his secretary/bookkeeper, Susan Douchette. He turned to Butcher for all financial information about the enterprise. This is illustrated by the following example. The evidence shows that John Blais advanced money to Blais-Porter repeatedly. He would write a personal check for an amount that was presented to him by Thomas Butcher. I am convinced that had Butcher brought to the attention of John Blais a need for immediate payment to the government, John Blais would have advanced money to make the payment, just as he advanced money to meet the payroll obligations to employees on more than one occasion. Thus, a cause—a contributing cause at the least—of the failure to pay the taxes was Butcher's failure to call the delinquencies to the attention of Blais. I must determine whether another contributing cause was that John Blais acted in reckless disregard of the facts as to whether or not a tax obligation was due and unpaid. Did he know enough that he was aware of uncertainty in his own mind about the status of the tax obligation, and then fail to inquire about the witholding taxes? If so, was this acting in "reckless disregard" (and willfully) in light of the extent of his knowledge of the financial condition of Blais-Porter during the second quarter?

Cases finding reckless disregard as a basis for willfulness under § 6672 include many that fall into distinctive fact patterns. Three of these fact patterns are noted here.

First, courts have held that reliance upon the statements of a person in control of the finances of a company may constitute reckless disregard when the circumstances show that the responsible person knew that the person making the statements was unreliable. *See, e.g., Gold v. United States,* 506 F.Supp. 473, 480 (E.D.N.Y.), *aff'd without opinion,* 671 F.2d 473 (2d Cir.1981). This requires a finding that the responsible person had knowledge that the other individual had in the past failed to perform adequately with regard to the financial affairs of the taxpayer entity. The present case does not come within this pattern. The reliability and competence of Thomas Butcher has never been at issue in this case.

Second, courts have held that "[w]illful conduct also includes failure to investigate or to correct mismanagement after having notice that withholding taxes have not been remitted to the Government." *See, e.g., Kalb v. United States,* 505 F.2d 506, 511 (2d Cir.1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). This requires a finding that the responsible person had "notice" that the taxes had not been remitted in the past. As noted earlier in this opinion, I do not find that John Blais had "knowledge" that taxes had not been remitted. If "notice" as used in *Kalb* is construed as requiring something less than "knowledge," cases in this category are in essence quite similar to those in the group to which I turn next.

Third, courts have found that when a responsible person continues to pay other bills knowing that the business is in financial trouble, he willfully violates § 6672 if he fails to make reasonable inquiry as to whether money would or would not be available for payment of the taxes when they became due. *See, e.g., Teel v. United States,* 529 F.2d 903, 905 (9th Cir.1976). This third theory is the basis for the government's strongest contention of reckless disregard.

■ In its post-trial brief, the government argues that John Blais "should have known" about the financial condition of Blais-Porter and the unpaid tax liability because he was constantly advancing money to Thomas Butcher. This argument is based upon the incorrect premise that proof that one "should have known" is enough to establish "reckless disregard." The standard of reckless disregard is not an objective one; it requires that the person did in fact have the material state of mind. But the evidence to which the government points in its argument is nevertheless relevant to the issue of "reckless disregard" as circumstantial evidence of John Blais' state of mind. John Blais paid all the bills that were presented to him by Butcher. Such bills included General Motors Acceptance Corporation, the Reading permit fee, utility bills, parts bills, and the wages of Blais-Porter employees— which in May and June included John Blais himself. The government argues that by advancing this money, John Blais made a conscious decision not to pay the withholding taxes. In order for this argument to prove convincing, one must infer that John Blais knew that the taxes were not paid. I do not so find. But the question remains whether John Blais' failure to inquire about the nonpayment of withholding taxes constituted reckless disregard for the significance of known facts.

■ On one hand, John Blais argues that he relied upon Thomas Butcher to present all the bills to him for payment. In the present case, however, no credible evidence was presented that Thomas Butcher told John Blais that he had paid the withholding taxes or that money was set aside for this purpose. On the other hand, the government argues that John Blais, the attorney, made loans for the payroll, which represented the net amount paid to the employees. *See Sorenson v. United States,* 521 F.2d 325, 328 (9th Cir.1975) ("the payment of net wages in circumstances where there are no available funds in excess from net wages from which to make withholding is a willful failure to collect and pay over under § 6672"). I find persuasive the contention that John Blais knew that an unpaid difference existed be-

tween the gross wages and the net amount paid out to employees. This is a difference that a person in John Blais' circumstances would have learned, upon even slight inquiry, including inquiry as to whether withholding taxes were or were not being set aside as required by law. I find that John Blais, if not knowing that the taxes remained unpaid, at the least knew that he did not know whether they had been paid and that he could easily find out by asking. This finding satisfies the state-of-mind requirement of "reckless disregard."

■ Although it may have been reasonable for John Blais to depend generally on Thomas Butcher to present liabilities to him when they became due, this is not a defense. "Reasonable cause" does not negate "reckless disregard." *Monday,* 421 F.2d at 1215. Moreover, as an experienced attorney and the holder of the power of attorney for William Blais, John Blais had a duty to his principal to ask Butcher whether adequate provisions were being made for withholding taxes. Also, the factfinding that John Blais acted with reckless disregard as to whether a tax obligation remained outstanding is strengthened by the fact that John Blais was receiving paychecks for his own services with a clear indication that certain amounts were withheld. I find that he was aware of uncertainty about the status of the tax obligations and that he acted with the state of mind of reckless disregard for unpaid withholding tax liability in the circumstances of a financially ailing business.

## IV.

### COSTS

Recognizing the court's obligation to exercise discretion regarding the award of costs, in accordance with 28 U.S.C. § 2412 (1976) (statute subsequently amended for recently filed cases), the government requests costs in this action because (1) "John Blais has consistently refused even to discuss settlement of this matter"; (2) "it is not inconceivable that this case could have been resolved through summary judg-

ment proceedings under Rule 56, based upon the Blais deposition and the [Blais-Porter] records, had the government been provided the [Blais-Porter records] from the start." *Government's Post-Trial Memorandum* at 67–68 (Mar. 13, 1985). These arguments are without merit.

■ Blais' refusal to discuss settlement is not a basis for an award of costs. Moreover, an impartial observer would surely note that the government might also be criticized for causing the expenditure of tremendous resources of the court and the parties, easily valued at many times the amount at issue (approximately $3000 plus interest), pressing vigorously a claim as close and debatable as this one, both on the facts and the law, and without any proffer of evidence that the government made a reasonable effort to compromise this reasonably disputable claim. Before arguing that John Blais' adamant assertion of his right to trial of his small claim is a valid reason for awarding costs against him, surely the government should at least proffer evidence that its own pre-trial position—without the benefit of hindsight knowledge of the court's final disposition of all the disputable issues—was at least somewhat less adamant. Nor is there any indication the government has succeeded here in establishing any important precedent or example. Indeed, most of the issues of first impression presented in this case have been resolved against the government. The assertion of non-meritorious contentions regarding these issues of first impression has added materially to the burden this litigation has imposed both on the opposing party and this court. Moreover, the government's contention that the case could have been decided on summary judgment shows that the government attorneys have either fundamentally misunderstood Rule 56, Federal Rules of Civil Procedure, or have misunderstood the law or the evidence in this case. In the exercise of discretion I conclude that neither party should be awarded costs against the other.

Judgment will be entered for the third-party plaintiff. Each party will bear its

own costs. The Clerk will enter judgment for $3,032.07 plus statutory interest from March 20, 1978.

## JUDGMENT

In accordance with the opinion dated June 19, 1985, IT IS ORDERED:

Judgment is hereby entered for the third party plaintiff, Internal Revenue Service, against the defendant, John F. Blais, in the amount of $3,032.07 plus statutory interest from March 20, 1978 to the date of entry of judgment, June 25, 1985, in the amount of $3,291.01. The interest is computed at the following rates:

| | |
|---|---|
| 2/1/78 through 1/31/80 | 6% |
| 2/1/80 through 1/31/82 | 12% |
| 2/1/82 through 12/31/82 | 20% |
| 1/1/83 through 5/30/83 | 16% (compounded) |
| 7/1/83 through 12/31/84 | 11% (compounded) |
| 1/1/85 through present | 13% (compounded) |

for a total judgment in the amount of $6,323.08, plus post-judgment interest at the rate of 7.70% per annum. Each party will bear its own costs.