**UNITED STATES, Plaintiff,**

v.

**Darrell W. COPE, et al., Defendants.**

**Civ. A. No. C86–0051P(J).**

United States District Court,
W.D. Kentucky,
Paducah Division.

Oct. 23, 1987.

Michael F. Spalding, Asst. U.S. Atty., Louisville, Ky., Michael J. Salem, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

James A. Anderson, III, Lewis, Anderson & Gilmore, Benton, Ky., for Cope, Quality and intervenor Croley.

Joseph A. Hammer, Hammer & Weber, Louisville, Ky., for ITT Industrial Credit Corp.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHNSTONE, Chief Judge.

A trial was held in this matter on April 15, 1987 in Paducah, Kentucky. This is a six-count civil action in which the Internal Revenue Service (hereinafter the IRS) seeks to reduce certain tax assessments to judgments and to foreclose tax liens against defendants Darrell W. Cope, d/b/a Cope Mining Company and Quality Construction Corporation. In addition, the IRS seeks damages against defendant I.T.T. Industrial Credit Corporation for failing to honor two Internal Revenue Service levies or for tortious conversion. Intervenor Debbie Sexton Croley joins this suit claiming that taxes and penalties assessed against her as a responsible person in charge of paying Cope Mining Company's taxes, were improper. Jurisdiction is proper under 28 U.S.C. §§ 1340, 1345, 1346 and 26 U.S.C. § 7402.

### FINDINGS OF FACT

Upon the record before the court, the stipulations of the parties and the evidence adduced at this trial, the court finds the following to be the facts of this case.

1. Defendant, Darrell W. Cope (hereinafter Cope), formerly doing business as Cope Mining Company (taxpayer identification number 61–0910620), resides at 2100 Pepper Lane, Benton, Kentucky.

2. Defendant, Quality Construction Corporation (hereinafter Quality), also known as Quality Corporation (taxpayer identification number 61–0607667), is a Kentucky corporation formerly having its principal place of business at 337 North Poplar, Benton, Kentucky.

3. Defendant, I.T.T. Industrial Credit Corporation (ITT) is a corporation doing business within the Commonwealth of Kentucky and having an office at Suite 228, 4429 Bardstown Road, Louisville, Kentucky.

4. Cope was assessed for the following:

a. On February 11, 1980, Cope was assessed Federal Insurance Contribution Act taxes and Federal Employee Income Withholding taxes (hereinafter cumulatively referred to as FICA taxes) for the quarter ending September 30, 1979. This sum was not paid to the IRS. The unpaid assessed balance due the IRS as of April 29, 1985

was $42,947.35. Interest and penalties accrued after April 29, 1985. Notice of a Federal Tax Lien was filed in Marshall County, Kentucky with respect to that tax on June 28, 1980.

b. On March 19, 1980 Cope was assessed FICA taxes for the quarter ending December 31, 1979. The assessment was not paid. The unpaid assessed balance due the IRS as of May 29, 1980 was $38,908.03. Interest and penalties accrued after May 26, 1980. A Notice of Federal Tax Lien was filed with respect to that tax in Marshall County, Kentucky on June 28, 1980.

c. On May 16, 1980 Cope was assessed FICA taxes for the quarter ending March 31, 1980. Those taxes were not paid. The unpaid assessed balance due the IRS as of May 16, 1980 was $28,105.38. Interest and penalties accrued after May 16, 1980. A Notice of Federal Tax Lien was filed with respect to that tax in Marshall County, Kentucky on June 28, 1980.

d. On February 23, 1981 Cope was assessed Federal excise taxes for the quarter ending March 31, 1980. This assessment was not paid. The unpaid assessed balance due the IRS as of May 4, 1981 was $3,406.43. Interest and penalties accrued after May 4, 1981. Notice of Federal Tax Lien was filed in Marshall County, Kentucky on April 1, 1981.

e. On March 23, 1981, Cope was assessed Federal Unemployment Act taxes for the year ending December 31, 1980. The unpaid assessed balance for those taxes is $879.08 as of May 25, 1981. Interest and penalties accrued after May 25, 1981. A Notice of Federal Tax Lien was filed in Marshall County, Kentucky on May 4, 1981.

5. Quality was assessed for the following:

a. On March 17, 1980, Quality was assessed FICA taxes. This assessment was not paid. The unpaid assessed balance due the IRS as of December 29, 1986 was $5,076.17. Interest and penalty accrued after December 29, 1986. A Notice of Federal Tax Lien was filed in Marshall County, Kentucky on June 28, 1980.

b. On May 16, 1980, Quality was assessed FICA taxes for the quarter ending March 31, 1980. This assessment was not paid. The unpaid assessed balance due the IRS as of December 29, 1986 was $41,758.77. Interest and penalties accrued after December 29, 1986. A Notice of Federal Tax Lien was filed in Marshall County, Kentucky June 28, 1980.

c. On October 27, 1980, Quality was assessed FICA taxes for the quarter ending June 30, 1980. This assessment was not paid. The unpaid assessed balance due the IRS was $21,461.65. Interest and penalties accrued after December 29, 1986. A Notice of Federal Tax Lien was filed in Marshall County, Kentucky on December 2, 1980.

6. Notices and demands for payment of the aforementioned assessments were made on Cope and Quality.

7. Quality bought the following property on the following dates:

a. A Grove RT 6205 rough terrain crane, serial number 40092, from Whayne Supply Company on November 1, 1978.

b. A Caterpillar 627 wheel tractor, serial number 1551266, from Whayne Supply Company on September 14, 1979.

c. A Caterpillar 627 push-pull cushion hitch tractor, serial number 68M711, from Whayne Supply Company.

8. Security agreements with respect to the property described in paragraph 7 were assigned to ITT on November 20, 1978 and September 13, 1979.

9. ITT repossessed the three pieces of property described in paragraph 7.

10. ITT gave proper notice to the IRS under Internal Revenue Code § 7425 by giving written notice to the IRS at least 25 days before the proposed sale.

11. ITT sold the property described in paragraph 7 on February 25, 1981 for $260,000.00.

12. ITT expended the sum of $10,000.00 for broker's services in selling the collateral.

13. After the sale on February 25, 1981, ITT immediately distributed all the pro-

ceeds according to KY.REV.STAT. § 355.9–504 by applying $10,000.00 to the broker's fee, $42,220.27 to satisfy the debt on the property described in paragraph 7.a., and $200,981.00 to satisfy the debt on the property described in paragraphs 7.b. and 7.c. The remainder of the proceeds were also distributed and applied by ITT at that time.

14. IRS levies with respect to taxpayers Cope and Quality was served on ITT on May 4, 1981. These levies seized all property and rights belonging to Cope and Quality then in the possession of ITT, in the amounts of $134,161.94 and $132,-444.57.

15. Debbie W. Croley resides in Marshall County, Kentucky.

## CONCLUSIONS OF LAW

After consideration of the applicable statutes and caselaw before it, the court makes the following conclusions of law.

1. The assessments, judgments and liens against defendants Cope and Quality are valid.

■ Assessments duly made by the Secretary or his delegates are presumptively correct and proper. *United States v. Besase*, 623 F.2d 463, 465 (6th Cir.1980), *cert. denied*, 449 U.S. 1062, 101 S.Ct. 785, 66 L.Ed.2d 605 (1980). The burden is on the taxpayer to show that the Secretary's assessments are improper. *Helvering v. Taylor*, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935). In the present case, the assessments against Cope and Quality were properly made by a delegate of the Secretary and certified to the Court. *United States v. Haley*, 38 A.F.T.R.2d 5897, 59901 (S.D. Ohio 1976), *aff'd*, 582 F.2d 1281 (6th Cir. 1978), *cert. denied*, 440 U.S. 959, 99 S.Ct. 1501, 59 L.Ed.2d 772 (1979); *Adams v. United States*, 175 Ct.Cl. 288, 358 F.2d 986, 994 (1966). At the trial of this action, neither Cope nor Quality presented evidence tending to defeat the assessments made against them. They therefore failed to meet their burden of proving that the assessments were incorrect. *Sinder v. United States*, 655 F.2d 729, 731 (6th Cir. 1981).

In accordance with the foregoing, the court concludes that the assessments against Cope and Quality are valid and that Cope and Quality are liable to the United States in the amounts of the assessments against them, plus statutory additions thereto, including statutory interest from the dates set forth above.

2. ITT properly refused to honor the Internal Revenue Service's levies.

■ The IRS made a demand upon both Quality and Cope for taxes due and owing to the federal government. Quality and Cope did not pay. Upon failure to pay the taxes after demand therefore, the amount of the taxes, plus interest, penalties, and accrued costs became a lien in favor of the United States. 26 U.S.C. § 6321. The lien so created arose at the time the taxes were assessed and attached to all property and rights to property belonging to Cope and Quality. 26 U.S.C. §§ 6321, 6322. Thereafter, the IRS could collect the taxes by levy, which is precisely what the IRS did. 26 U.S.C. § 6331(a).

Two months after ITT repossessed and sold its collateral, the IRS levied on Cope and Quality's property and rights to property in ITT's possession. Specifically, the IRS claimed, that $16,798.73 of Cope and Quality's property remained in ITT's possession. ITT refused to honor the levy claiming that it had already disbursed the proceeds from the sale of the collateral according to KY.REV.STAT. § 355.9–504(1)(a)-(c) and that it no longer had any property belonging to Cope in its possession at that time. The IRS claimed that its lien continued into the surplus proceeds of the collateral sale in ITT's possession and that ITT wrongfully disbursed those funds and wrongfully refused to honor the IRS's levy. For the reasons stated below, the court must hold for ITT.

The methods by which an inferior tax lien of the IRS may be discharged through a nonjudicial sale under local law are set out in 26 U.S.C. § 7425. Under 7425

a sale of property on which the United States has or claims a lien ... *shall have the same effect with respect to the dis-*

*charge of divestment of such lien* or such title of the United States, *as may be provided with respect to such matters by the local law of the place where such property is situated,* if ... *notice* of such sale is given in the manner prescribed in subsection (c)(1).

26 U.S.C. 7425(b)(2)(C) (emphasis added).[1] The parties have stipulated that ITT gave adequate and proper notice under the terms of 26 U.S.C. § 7425(c)(1) before selling the collateral in question.

The wording and meaning of this statute are clear,

> [w]here foreclosures covered by this provision are made *without* proper notice to the Government, the bill provides that this does not affect the Government's claim under a tax lien.... In these cases, the Government's claim continues against the property into the hands of a third party. On the other hand, ... *where the Government is notified of the proceeding, a sale has the same effect on the claim as local law provides with respect to similar claims.*

H.R.REP. No. 1884, 89th Cong., 2d Sess. (1966) (emphasis added). Accordingly, the narrow question before the court is whether, under local law, a lien similar to the IRS's would continue in the surplus proceeds to a nonjudicial sale if the claimant did not demand satisfaction before distribution of the sale proceeds.

It is undisputed in this case that Kentucky law, in particular KY.REV.STAT. § 355.9–504, is the applicable local law under 26 U.S.C. § 7425. KY.REV.STAT. § 355.9–504 provides that proceeds from the sale of repossessed collateral shall be applied first to the reasonable expenses of retaking and selling the collateral, second to the debt under which the collateral was sold and finally to the debt of any subordinate security interest, *"if written notification of demand therefore is received before distribution of the proceeds is complete."* [2] KY.REV.STAT. § 355.9–504 (emphasis added). In the present case, ITT repossessed its collateral. In conformity with 26 U.S.C. § 7425(c)(1), ITT informed the IRS of its intent to sell the collateral. The IRS did not make a demand for satisfaction of its debt at that time. The collateral was sold. The IRS made no written demand at that time either. The proceeds were applied to the expenses of sale, KY.REV.STAT. § 355.9–504(1)(a), and to satisfy ITT's debt, KY.REV.STAT. § 355.9–504(1)(b). Some pro-

---

1. Section 7425 provides in pertinent part:

   **(b) Other sales.** Notwithstanding subsection (a) a sale of property on which the United States has or claims a lien, or a title derived from enforcement of a lien, under the provisions of this title, made pursuant to an instrument creating a lien on such property, pursuant to a confession of judgment on the obligation secured by such an instrument, or pursuant to a nonjudicial sale under a statutory lien on such property—

   .     .     .     .     .

   (2) shall have the same effect with respect to the discharge of divestment of such lien or such title of the United States, as may be provided with respect to such matters by the local law of the place where such property is situated, if—

   .     .     .     .     .

   (C) notice of such sale is given in the manner prescribed in subsection (c)(1).
   **(c) Special rules.**
   (1) *Notice of sale.* Notice of a sale to which subsection (b) applies shall be given (in accordance with regulation prescribed by the Secretary) in writing, by registered or certified mail or by personal service, not less than 25 days prior to such sale, to the Secretary.

2. KY.REV.STAT. § 355.9–504 provides

   (1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to the Article on Sales (Article 2). The proceeds of disposition shall be applied in the order following to
   (a) the reasonable expenses of retaking, holding, preparing for sale, selling and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorneys' fees and legal expenses incurred by the secured party;
   (b) the satisfaction of indebtedness secured by the security interest under which the disposition is made;
   (c) the satisfaction of indebtedness secured by any subordinate security interest in the collateral if written notification of demand therefore is received before distribution of the proceeds is completed. If requested by the secured party, the holder of a subordinate security interest must seasonably furnish proof of his interest, and unless he does so, the secured party need not comply with his demand.

ceeds remained. ITT distributed the surplus proceeds according to KY.REV.STAT. § 355.9–504(1)(c) to satisfy other debts. Just over two months *after* the sale of the collateral and complete distribution of the proceeds the IRS levied on ITT and demanded satisfaction of the IRS's debt. Under Kentucky law, this demand was two months too late. A secured creditor holding a lien similar to the IRS's, asserting a demand two months after sale and distribution would not be able to reach either collateral or proceeds already distributed. KY.REV.STAT. § 355.9–504(1)(c). Under the plain terms of 26 U.S.C. § 7425, the same holds true for the IRS.

In accordance with the foregoing, the court concludes that after ITT distributed all of the proceeds of its sale of the collateral under KY.REV.STAT. § 355.9–504, ITT no longer had any property belonging to Cope in its possession. The Court accordingly concludes that ITT properly refused to, and in fact could not have complied with the IRS levy of May 4, 1981 against property belonging to Cope and Quality in ITT's possession. The court must also conclude under 26 U.S.C. § 7425 that the IRS levy did not continue in the proceeds of ITT's nonjudicial sale of the collateral because the IRS did not give notification of its claim in the collateral before complete distribution of the proceeds as required by KY.REV. STAT. § 355.9–504.

3. This court has no jurisdiction over the claim of Intervenor Debbie Croley.

Intervenor Debbie Croley (hereinafter Croley) was assessed under 26 U.S.C. § 6672 [3] for $88,809.59 in taxes and penalties. In her "Intervening Pleading", Croley seeks to have the IRS's assessments "expunged." The IRS claims that this court lacks jurisdiction over Croley's intervening claim because she did not first pay over her taxes and seek a refund as required by 26 U.S.C. § 7422. *Miller v. United States*, 784 F.2d 728, 729 (6th Cir. 1986). 26 U.S.C. § 7422 provides that

[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been *duly filed* with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422 (emphasis added).

■ A taxpayer seeking a refund or adjudication of his claim that an assessment and penalty under § 7425 is improper need only pay a divisible part of the assessment to meet the statutory jurisdictional prerequisites to bringing a suit in federal district court. *Boynton v. U.S.*, 566 F.2d 50 (9th Cir.1977); 26 U.S.C. § 6672(b). However, the taxpayer must still "duly file" a claim for refund or credit before she may maintain a suit in federal court.

■ A taxpayer's claim is "duly filed" with the IRS when it has been "delivered and received." *See United States v. Lombardo*, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1916); *Miller v. United States*, 784 F.2d 728, 730 (6th Cir.1986). This is the physical delivery rule. The only two exceptions to the § 7422(a) physical delivery rule are contained in § 7502. Section 7502 provides that if any document which must be filed within a prescribed period and which is after that period "delivered by United States mail" to the office where it is to be filed, the date of the U.S. postmark stamped on the envelope "shall be deemed to be the date of delivery." 26 U.S.C. § 7502(a)(1). This rule only applies where

---

**3.** 26 U.S.C. § 6672 provides:

§ 6672. Failure to collect and pay over tax, or attempt to evade or defeat tax.

(a) General rule. Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any

manner to evade or defeat any such tax or the payment thereof, whall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

the document is actually received. The second exception set out in § 7502 provides that if a document is sent by registered mail, such registration shall be *prima facie* evidence that the document was delivered to the office to which it was addressed, and that in that case the postmark shall be deemed the date of delivery. 26 U.S.C. § 7502(c)(1). Obviously, this rule applies only where the document is sent by registered mail.

In the present case, the IRS claims that it never received a claim for refund from Croley. As proof of this, the IRS offers a Certificate of Assessments and Payments from the Cincinnati Service Center and a "ledger card"[4] from the Internal Revenue Service both of which show that a check for $36.68 was received for Croley's taxes but that the check was dishonored. The Certificate and the ledger card both show that the $36.68 check was received on February 13, 1984 and dishonored on February 13, 1984. The IRS records do not show any other payment, nor any pending taxpayer claim.[5]

Croley testified that after she was notified of her assessment, she completed and signed an "843 Form" claiming a refund, wrote a check to the IRS for the amount of $36.68 as payment for one quarter's taxes for one employee, and directed her attorney to mail the Form and the check to the IRS. At trial Croley did not produce a copy of the signed 843 Form she allegedly sent to the IRS. Likewise, no certified mail receipt was produced at trial, and Croley produced no other direct evidence showing that her 843 Form was deposited in the United States mails addressed to the IRS.

As extrinsic evidence of her payment and refund claim, Croley offered her bank account statement showing a debit of $36.68 for check number # 537 on February 17, 1984 and sufficient funds to cover that draft. Croley claims that check # 537 is the check which was sent to the IRS along with her 843 Form. She did not submit a copy of the canceled check at trial.[6]

Upon the proof before it, the court must find that Croley's claim for refund was not sent by registered mail and was never received by the IRS. Therefore, the only two exceptions to the § 7422 physical delivery rule do not apply. *Miller* at 730. Although Croley has produced persuasive extrinsic evidence of her claim, this court may not find that Croley mailed a claim to the IRS upon the basis of extrinsic evidence. *Redman v. Commissioner,* 820 F.2d 209, 212 (6th Cir.1987). The court must conclude that Croley has not met her burden of proving that her claim was "duly filed" within the meaning of 26 U.S.C. § 7422.

4. The "ledger card" submitted by the IRS is in fact a copy of a computer printout from the IRS's records.

5. The court's interpretation of IRS records is wholly dependent upon the IRS's explanation of its own "Automatic Data Processing" codes contained on the "ledger card" submitted as evidence in this case. It is evident that the Certificate of Assessments and Payments was created in reliance on this "ledger card." Therefore, the "ledger card" is the most probative evidence presented to the court.

The ledger card shows Croley's initial assessment and penalties to be $88,809.59. This amount was increased to $88,819.59 on assessment of a "Fees Costs" on March 26, 1984 as denoted by the code "TC 360". Earlier, on February 13, 1984, Croley's debit was *increased* by $36.68 across from the code "TCA 671" which the IRS claims means "Bad Ck Subsequent Payment" (sic). Croley's debit was *decreased* by $36.68 across from the code "TCA 670" which the IRS claims means "Subsequent Payment." The same ledger card shows a *further decrease* of Croley's debt by $88,819.59 across from the partially marked-out code "TC 530". No explanation is offered for this last entry. $88,819.59 is penciled in as a debit again at the bottom of the ledger card.

The ledger card does not show that any taxpayer action was ever pending. The IRS claims that the code "TC 470" would appear on the ledger card if any claim for refund had been filed. "TC 470" does not appear on the ledger card.

6. After the trial of this matter, the record was left open for supplementing by both sides to this controversy. The IRS was given thirty days within which to locate all records pertaining to Intervenor Croley. After an extension of time, the IRS produced all of its documentary proof and placed it in the record. Both sides thereafter submitted post-trial briefs on this case. After the trial, Intervenor Croley offered only a copy of her February 1984 bank statement in support of her contention that she paid over her taxes and sought a refund. Although given ample time to do so, Intervenor Croley has not sought to enlarge the record any further.

Accordingly, this court has no jurisdiction over Croley's claim. *Miller* at 731; *United States v. Rochelle,* 363 F.3d 225, 231 (5th Cir.1966); 26 U.S.C. § 7422(a); 28 U.S.C. § 1346(a)(1).

The Sixth Circuit Court of Appeals noted in *Miller* that the provisions of 26 U.S.C. § 7502 have produced some "harsh results." *See Miller* at 731, n. 4. This is too mild a phrase. The provisions of 26 U.S.C. § 7502 *have produced a gross injustice to Croley in this case.* Intervenor Croley testified that she filled out a form for refund and she signed a check to the IRS, that the check and the form were sent to the IRS. Her records show that her check was cashed. Croley's testimony was credible. In particular, Croley's explanation of check # 537 was credible and logical.

The IRS's evidence was not so persuasive. "After considerable effort" the IRS was able to produce two cryptic forms which show only that the IRS has no record

of Croley's claim. Were this court free to balance the weight of the evidence, it would give more weight to Croley's live and believable testimony than to the arcane and obscure "ADP"[7] codes on the IRS's computer printout and find that Croley had filed a claim. The court is constrained to hold otherwise.

The court must therefore dismiss the complaint of Intervenor Croley for lack of jurisdiction. In so doing, the court will elevate the negative inference presented by the IRS's lack of records to the status of an irrebuttable presumption. That is apparently what § 7502 was designed to do. *See Shipley v. Commissioner,* 572 F.2d 212, 214 (9th Cir.1977); *Redman* at 212. The practical result of this holding will be to confirm that Debbie Croley is a "responsible person" under 26 U.S.C. § 6672, although the evidence on that point is doubtful,[8] and that she willfully failed to collect the taxes assessed against Cope, although

---

7. *See* footnote 5 *supra.* "ADP" codes are Automatic Data Processing codes used by the IRS.

8. Section 6672 was "designed to cut through the shield of organizational form and impose liability upon those actually responsible for the employer's failure to ... pay over taxes." *McGlothin v. U.S.,* 720 F.2d 6, 8 (6th Cir.1983); *I.R.S. v. Blais,* 612 F.Supp. 700, 707 (D.C.Mass.1985). Consequently, the person liable under 26 U.S.C. § 6672 is broadly defined in 26 U.S.C. § 6671 as

   an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

26 U.S.C. § 6671(b).

   Croley testified that she was the "secretary" for Cope. A person who holds the corporate office of Secretary, with the power to make disbursements, is presumptively a "responsible person" for the purposes of section 6672. *Bolding v. United States,* 215 Ct.Cl. 148, 565 F.2d 663, 670 (1977); *Hildebrand v. U.S.,* 563 F.Supp. 1259, 1262 (D.N.J.1983). However, liability is not confined to officers of a corporation with the authority to disburse monies. *Cellura v. U.S.,* 245 F.Supp. 379 (N.D.Ohio 1965). Even one who is merely a clerical secretary may be a "responsible" person within the meaning of § 6672 if that employee is the person who has or shares the "final word" as to what bills should be paid. *See Walker v. U.S.,* 438 F.2d 127 (5th Cir.1971); *Campbell v. Nixon,* 207 F.Supp. 826 (E.D.Mich.1962). *Compare Grenker v..United States,* 64–1 U.S.T.C. para 9135 (F.D.C. N.J.1963) (Secretary-treasurer liable); *United*

States v. Galtrof, 245 F.Supp. 158 (S.D.N.Y.1965) (Secretary of the corporation); *Scott v. United States,* 173 Ct.Cl. 650, 354 F.2d 292 (1965) (Secretary-treasurer of corporation) *with Mattox v. United States,* 59–1 U.S.T.C. paragraph 9286 (F.D.C.Minn.1959) (Secretary-treasurer without control of corporate funds not liable); *Sherwood v. United States,* 246 F.Supp. 502 (E.D.N.Y. 1965) (Secretary-treasurer of corporation who was really only clerical help was not liable); *Lauinger v. Scanlan,* 65–1 U.S.T.C. paragraph 9336 (F.D.C.N.Y.1965) (one who held office of Secretary only nominally was not liable).

   Courts have considered the following factors in determining whether a person should be considered a responsible person under § 6672: (1) the ability of the person to sign checks; (2) the identity of officers, directors, and shareholders; (3) the identity of individuals who prepared the tax returns; (4) the identity of the individuals who were in control of the financial affairs of the corporation. *Braden v. U.S.,* 318 F.Supp. 1189 (S.D.Ohio 1970), *aff'd,* 442 F.2d 342 (6th Cir.1971); *Datlof v. U.S.,* 252 F.Supp. 11, 32–33 (E.D.Pa.), *aff'd,* 370 F.2d 655 (3d Cir.1966); *Blais* at 707.

   In the present case the evidence was equivocal on whether Intervenor Croley was an officer of the corporation or merely held a clerical position. She testified that she was a "secretary" but it was evident from her testimony that she was unsure of the distinctions between the Secretary of the corporation, and a clerical secretary. In any case, her testimony establishes that she had the power to sign the tax checks as well as the payroll checks, that she completed or signed several tax returns, and that she was

the evidence on that point is to the contrary.[9]

In accordance with the foregoing, the court concludes that it does not have the jurisdiction to hear Intervenor Croley's claim.

## JUDGMENT

In accordance with the Findings of Fact and Conclusions of Law this date entered, IT IS ORDERED AND ADJUDGED,

1. THE TAX ASSESSMENTS OF THE UNITED STATES AGAINST DARRELL W. COPE, d/b/a Cope Mining Company, ARE VALID AND JUDGMENT IS HEREBY ENTERED FOR THE UNITED STATES AND AGAINST DEFENDANT COPE in the amount of $114,245.17 plus interest accruing according to the law from the dates of assessment set forth in the Findings of Fact to the date of this judgment,

2. THE TAX ASSESSMENTS OF THE UNITED STATES AGAINST QUALITY CONSTRUCTION COMPANY ARE VALID AND JUDGMENT IS HEREBY ENTERED FOR THE UNITED STATES AND AGAINST DEFENDANT QUALITY CONSTRUCTION COMPANY in the amount of $117,696.57 plus interest accruing according to the law from the dates of assessment set forth in the Findings of Fact to the date of this judgment,

3. The claims of the United States against I.T.T. Industrial Credit Corporation are DISMISSED WITH PREJUDICE, and

4. The Intervening Pleading of Debbie Croley is DISMISSED FOR LACK OF JURISDICTION.

aware of the taxes owed at one point. No evidence offered at trial established the identity of Cope's officers, what corporate powers Croley actually possessed, nor who actually had the "final word" as to how money was spent for the corporation. Absent other proof, the court would be inclined to give the IRS the benefit of the doubt and agree that Croley might be a "responsible person" under 26 U.S.C. § 6672 since Croley's signature appeared on Cope's 941 Tax Forms. The evidence is not altogether clear however.

9. The question of willfulness is one of fact. *Dudley v. U.S.*, 428 F.2d 1196 (9th Cir.1970). It is therefore up to this court to determine from the documents and testimony produced at trial whether Croley acted willfully or not. The burden is upon her to establish that she did not act willfully. *See Helvering v. Taylor*, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); *Sinder v. U.S.*, 655 F.2d 729, 731 (6th Cir.1981); *Fitzgerald v. U.S.*, 407 F.Supp. 1132, 1136 (E.D.Ky.1976).

Willfulness as that term is used in § 6672 may be found if the evidence shows either (1) that the responsible person was aware that the taxes were unpaid and that he possessed the power to pay them with funds of the taxpayer entity, or (2) that the responsible person consciously disregarded known information about the tax obligation and thus acted in "reckless disregard" of the fact that the taxes were due and would not be paid. *Blais* to 708.

In the present case, the court finds ample evidence that Croley was not aware that Cope's taxes were unpaid or that Cope's taxes would go unpaid. Croley's testimony that she made out a check each week for taxes and sent that check off to the IRS was credible. She testified that she thought that all of Cope's taxes were being paid when she sent those checks off. Accordingly, Croley did not have the "awareness" or "knowledge" of the consequence of her actions that would support a finding of willfulness on her part even if Cope's taxes were not being satisfied. *Moody v. U.S.*, 275 F.Supp. 917 (E.D. Mich.1967).

Similarly, the court finds ample evidence to support a contention that Croley did not act in "reckless disregard" of the fact that the taxes were due and would not be paid. She testified that she made out checks to the IRS periodically and sent them to the Service. There is evidence that Croley discovered an unfiled 941 tax form, inquired of an examining revenue officer from the IRS whether a 941 tax form should be filed, and on his advice completed and filed the form. There is evidence that she thereafter filed the appropriate forms and drafted the appropriate checks each week. There was little other evidence to support actions by Croley that would fall within those generally recognized as constituting reckless disregard of the fact that taxes were due and would not be paid. *See, e.g., Gold v. U.S.*, 506 F.Supp. 473, 480 (E.D.N.Y.1981) (Reliance on statements of an unreliable person in control of company finances.); *Kalb v. U.S.*, 505 F.2d 506, 571 (2d Cir.1974) (Failure to investigate or correct mismanagement after notice that withholding taxes not remitted.); *Teel v. U.S.*, 529 F.2d 903, 905 (9th Cir.1976) (Continuing to pay other bills of a troubled company without making a reasonable inquiry whether money would be available to pay the tax when due.)