**In re QUATTRONE ACCOUNTANTS, INC., Debtor.**

**QUATTRONE ACCOUNTANTS, INC. and Phillip P. Quattrone, Plaintiffs,**

v.

**UNITED STATES of America, INTERNAL REVENUE SERVICE, Defendant.**

Bankruptcy No. 86–2307.
Motion Nos. 87–0246, 88–1704.

United States Bankruptcy Court, W.D. Pennsylvania.

July 12, 1988.

---

714

Robert O. Lampl, Pittsburgh, Pa., for debtor/plaintiffs.

J. Alan Johnson, U.S. Atty., Pittsburgh, Pa., Michael J. Salem, U.S. Dept. of Justice, Washington, D.C., for defendant.

1. Debtor's motions are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O). This Court's jurisdiction over the action by

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court is Debtor's Objection to the Claim of the Internal Revenue Service ("IRS"), and a Complaint to Determine Tax Liability of Debtor and Phillip P. Quattrone.[1]

Debtor disputes its identification, for tax assessment purposes, as a "responsible person" of the United Dairy Farmers Cooperative Association ("UDF"). Alternatively, Debtor contends that the IRS must first seek to satisfy the tax debt through UDF, and that Debtor should only be assessed, if at all, to the extent UDF is unable to cure the default. Debtor's principal, Quattrone, voices similar objections, and seeks this Court's determination that he is not obligated for UDF's delinquent trust fund taxes.

The IRS contends that Debtor is in fact a responsible party which willfully permitted UDF to become delinquent in its payment of trust fund taxes. Additionally, the IRS seeks dismissal of Quattrone's Complaint, asserting that this Court is without jurisdiction to decide the tax liability of a non-debtor, third party.

Based upon the testimony and arguments presented at trial, and the post-trial briefs submitted thereon, we find that Debtor is a responsible person, liable for trust fund taxes associated with UDF. We further find that this Court lacks jurisdiction to make a determination of the tax liability of Quattrone, a non-debtor, third party.

### FACTS

UDF was formed in 1965 as a dairy cooperative, owned and operated by member-volunteers. As it prospered, UDF found it needed professional accounting services, and hired the Debtor in that capacity in the late 1960's.

Ernest Hayes ("Hayes"), UDF's President, ran the day-to-day administration

Quattrone is disputed and is one of the subjects of this Opinion.

from its inception through 1981. His management responsibilities were delegated to him by the Board of Directors. The Board hired Debtor to handle all of the accounting and financial activities of UDF. Debtor was very important to the internal machinations of UDF, as it had no in-house bookkeeping and accounting staff, relying exclusively upon Debtor's operations. UDF constituted over fifty percent (50%) of Debtor's business, with as many as ten (10) of Debtor's twenty (20) employees working on the UDF account full time.

On a frequent, if not daily, basis Hayes and Debtor telephoned and/or met to discuss UDF's finances. Debtor was responsible for calculating payroll and distributing paychecks for all of UDF's 60–80 retail outlets. All of UDF's bills were sent directly to Debtor's offices; and all standard monthly bills were paid by Debtor automatically, by use of signature facsimile stamps prepared for Hayes and Helen Zitney.[2] For special debts, outside the standard monthly payments, the decision to pay and when, was made by Hayes and Debtor jointly. Debtor was also responsible for the preparation and filing of UDF's federal, state and local tax returns. Said returns were similarly signature stamped at Debtor's offices. Finally, Debtor was authorized to procure and manage all of UDF's loans.

Each month UDF's Board of Directors held a general meeting. Hayes and Debtor always attended these meetings, at which time Debtor would make a complete financial presentation, advising the members regarding the *previous* month's revenues and expenses, including bills Debtor determined to pay and debts it left outstanding.

UDF maintained three (3) checking accounts. One was used as a "petty cash" fund, and was limited to disbursements of less than $1,000.00. The second account was used only for payment to the milk producers. These two checkbooks were kept at UDF's offices. The third checking account, the General Account, was used to collect all revenues and disburse all other expenses. This checkbook was maintained at Debtor's offices. Because Debtor's offices were not in the UDF facility, and as Debtor was responsible for distributing a very high volume of checks, the previously mentioned signature facsimile stamps for Hayes and Zitney were made and delivered to Debtor. Debtor used these facsimile stamps on all checks and tax returns.

This procedure worked very successfully until early in 1980 when a succession of events occurred, radically changing UDF's financial picture. Initially, the Department of Agriculture required UDF to modify its schedule of payments to its suppliers. As these payments constituted a substantial portion of UDF's monthly expenses, the radical change caused many payments to creditors to be untimely.

Shortly thereafter, Pittsburgh National Bank ("PNB") "called" an $800,000.00 loan, and froze UDF's accounts. UDF's Board of Directors held a special meeting, demanding an explanation. Debtor assured the Board that the bank had been paid, but the bank insisted that the loan was in default. Debtor advised the members that the loan could be paid a second time, until the problem was uncovered. This would be accomplished by the members lending UDF two-thirds of one month's milk receipts; the members agreed to do so, seeing no other means to obtain the release of their accounts. Upon information of same, the Department of Agriculture advised UDF that the members' loan would be characterized as an assessment; the Department brought suit against UDF, and obtained a $1.2 million judgment.

At this same time, the IRS began its investigation, because UDF was $50,000.00 overdue on its withholding tax deposits. Again, the Board of Directors called a special meeting to determine how to proceed. UDF was without sufficient funds to pay the taxes. The farmers could not use their milk receipts to assist, without creating another assessment by the Department of

---

**2.** Zitney was *nominal* treasurer of UDF, but was never involved in any of the financial dealings of UDF.

Agriculture. Banks would not lend UDF any money due to the $1.2 million judgment outstanding. Again, the Board of Directors turned to Debtor for guidance and assistance. Debtor sought out individual investors, including Quattrone, individually, forming a group called Professional Associates. UDF borrowed $250,000.00 from Professional Associates, specifically to pay presently due taxes and to bankroll the remainder for payment of withholding taxes anticipated for the following four (4) quarters. In return for this loan, UDF gave Professional Associates $3.5 million of equipment as collateral, while continuing to use same under a leaseback agreement.

During the course of the following year the Board of Directors and individual members consistently questioned Debtor about the quarterly tax payments, and Debtor consistently averred that same were paid. In the fall of 1981 the Board directed Debtor to produce deposit receipts to verify the tax payments. When Debtor's receipts did not correspond to the amounts due, Debtor was fired.

In October of 1982, UDF filed a Chapter 11 bankruptcy petition, and listed, in its scheduled debts, outstanding withholding taxes for the periods ending June 30, 1981 and September 9, 1981.

In an effort to collect these taxes the IRS assessed several parties pursuant to 26 U.S.C. § 6672 for payment of penalties associated with nonpayment of trust fund taxes. Those parties so assessed included Hayes, Quattrone, and Debtor. Said assessments now total $85,368.82, plus interest.

## ANALYSIS

■ Initially we address Debtor's Objection to IRS Exhibits 1 and 10 as being hearsay. The IRS has argued that the documents in question, written records of telephone interviews conducted by an IRS agent, constitute admissible hearsay as business or public records, pursuant to 28 U.S.C. § 1732 and Federal Rule of Evi-

dence 803(8). The criteria for both hearsay exceptions are essentially the same:

(1) the hearsay statement must constitute a factual finding;

(2) the factual finding must have resulted from an investigation authorized by law;

(3) the declarant must have had firsthand knowledge of the matter asserted; and

(4) the hearsay statement must be trustworthy.

*Bowman v. Kaufman*, 387 F.2d 582 (2nd Cir.1967); *United States v. Hickey*, 360 F.2d 127 (7th Cir.) *cert. denied* 385 U.S. 928, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966); *Fraley v. Rockwell International Corp.*, 470 F.Supp. 1264 (S.D.Ohio 1979).

Once a report is conclusively shown to represent findings of a public agency made pursuant to an investigation authorized by law, the central issue becomes whether the report is trustworthy. *Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 613 (8th Cir. 1983). The burden of proving that the statement is untrustworthy falls on the party opposed to it. *United States v. Paducah Towing Co., Inc.*, 692 F.2d 412 (6th Cir.1982); *Revlon, Inc. v. Carson Products Co.*, 602 F.Supp. 1071 (S.D.N.Y.), *aff'd.* 803 F.2d 676 (2nd Cir.), *cert. denied*, 479 U.S. 1018, 107 S.Ct. 671, 93 L.Ed.2d 722 (1986). The person making the record, or supplying the information on which it is based, must have had no peculiarly powerful motive to misrepresent; such a motive, if it exists, must be relatively minimal and marginal. *Hoffman v. Palmer*, 129 F.2d 976 (2nd Cir.1942), *aff'd.* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943).

The Tenth Circuit recently decided a case with similar factual background. In *United States v. Bohrer*,[3] 807 F.2d 159 (10th Cir.1987), the IRS agent telephoned the Defendant at a number obtained from directory assistance and conducted an information-gathering interview. The IRS noted the Defendant's responses on its form

---

**3.** *Bohrer* is somewhat distinguishable in that it deals with criminal issues of tax evasion. However, the logic concerning the trustworthiness of the evidence is equally cogent to our proceeding.

called a "contact card". The Court found that admission of the contact card was improper:

> Admission under the business records exception is not available to documents prepared for ultimate purposes of litigation, when offered by the party maintaining the documents.

*Bohrer*, 807 F.2d at 162.

The Tenth Circuit determined that the contact card was maintained as part of the IRS case file against the Defendant, and therefore was maintained for the purpose of prosecution. Therefore, the trustworthiness of the document was called into question.

■ In the case at bar, the IRS agent testified that he called a telephone number, identified himself and asked to speak with Ernest Hayes. The party identified himself as Ernest Hayes and proceeded to answer numerous questions relating to his role at UDF. He was informed that the interview was being conducted to determine § 6672 liability. A second telephone interview was similarly conducted with Mr. Richard Moody, who replaced Mr. Hayes at UDF in 1981.

The trustworthiness of these interviews is called into question on several levels. Initially, we note that the IRS agent made his contact by telephone: he had no way to verify that his conversations took place with Ernest Hayes or Richard Moody. The agent did not make any further inquiry for purposes of verification.

Additionally, we must question the trustworthiness of the information provided to the IRS agent. In each instance the agent identified himself and advised the other party to the call that the interview was being conducted to determine the responsibility of various parties for the payment of taxes on behalf of UDF. Such knowledge immediately warns the listener that he is being considered as such a party, and provides him with substantial motive to make statements vindicating himself and blaming others.

Finally, this contact card was prepared by the IRS agent with the knowledge that he would be engaging in litigation of this issue. Because the lack of trustworthiness has occurred on several levels, the documents cannot be admitted as hearsay exceptions.

Turning to the major issues presented, concerning liability for taxes, we find some background information to be essential. Pursuant to § 3101 of the Internal Revenue Code, 26 U.S.C. § 3101, a tax, in a specific percentage, is imposed on every individual's income, as a contribution to Social Security and related programs. Section 3102 of the Code places the burden of collection on the employer. These amounts withheld from employees constitutes a "trust fund" for the United States. 26 U.S.C. § 7501. If a person who is required to collect and pay over said tax fails to do so, he or she may be liable for a penalty equal to the amount of the tax. 26 U.S.C. § 6672. *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978); *United States v. Huckabee Auto Co.*, 783 F.2d 1546 (11th Cir.1986); *Datlof v. United States*, 252 F.Supp. 11 (E.D.Pa.1966) *aff'd.* 370 F.2d 655 (3rd Cir.1966) *cert. denied* 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967); *In re Clate*, 69 B.R. 506 (Bankr.W. D.Pa.1987).

> Section 6672 states in pertinent part:
> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to the other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

■ The purpose of § 6672 is "to cut through the shield of organizational form and impose liability upon those responsible for an employer's failure to withhold and pay over the tax." *Dudley v. United States*, 428 F.2d 1196 (9th Cir.1970); *Werner v. United States*, 374 F.Supp. 558 (D.Conn.1974) *aff'd.* 512 F.2d 1381 (2nd Cir. 1975); *Allen v. United States*, 547 F.Supp.

357 (N.D.Ill.1982); *Matter of Driscoll's Towing Service*, 51 B.R. 990 (S.D.Fla.1985); *In re Bradford*, 35 B.R. 166 (Bankr.W.D. Va.1983). Therefore, liability may be imposed only upon (1) a responsible person, who has (2) willfully failed to perform a duty to collect, account, or pay over the taxes. *George v. United States*, 819 F.2d 1008 (11th Cir.1987); *Mazo v. United States*, 591 F.2d 1151 (5th Cir.) *cert. denied* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

After the penalty has been assessed under § 6672, the taxpayer has the burden of proving either that he was not a responsible person, or that the failure to pay the tax was not willful. *I.R.S. v. Blais*, 612 F.Supp. 700 (D.Mass.1985).

Although called a "penalty" in the Code, § 6672 liability is not truly penal in nature; it is "simply a means of ensuring that the tax is paid." *United States v. Huckabee Auto Co., supra; Monday v. United States*, 421 F.2d 1210 (7th Cir.), *cert. denied* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970); *Newsome v. United States*, 431 F.2d 742 (5th Cir.1970); *Botta v. Scanlon*, 314 F.2d 392 (2nd Cir.1963); *Datlof v. United States, supra.* Because § 6672 is a tax collection device rather than a criminal sanction, it is IRS policy to collect the one hundred percent (100%) penalty only once, abating the assessment to the extent a related payment is made. *United States v. Sotelo*, 436 U.S. 268, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978) *reh. denied* 438 U.S. 907, 98 S.Ct. 3126, 57 L.Ed.2d 1150; *In re Technical Knockout Graphics, Inc.*, 833 F.2d 797 (9th Cir.1987); *United States v. Huckabee Auto Co., supra; Gens v. United States*, 615 F.2d 1335, 222 Ct.Cl. 407 (1980) *cert. denied* 459 U.S. 906, 103 S.Ct. 209, 74 L.Ed.2d 167 (1982) *reh. denied*, 459 U.S. 1081, 103 S.Ct. 503, 74 L.Ed.2d 642; *I.R.S. v. Blais, supra.*

■ Furthermore, the liability imposed under § 6672 is separate and distinct from that imposed on the employer. *United States v. Huckabee Auto Co., supra; Ho-*

*ward v. United States*, 711 F.2d 729 (5th Cir.1983); *Datlof v. United States, supra; Bloom v. United States*, 272 F.2d 215 (9th Cir.), *cert. denied* 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1960). Therefore, the IRS is not required to first pursue collection from the employer before assessing a responsible person. *United States v. Huckabee Auto Co., supra; Datlof v. United States, supra; Hornsby v. I.R.S.*, 588 F.2d 952 (5th Cir.1979); *Kelly v. Lethert*, 362 F.2d 629 (8th Cir.1966); *Hutchinson v. United States*, 559 F.Supp. 890 (N.D.Ohio 1982); *In re All Star Sports, Inc.*, 78 B.R. 281 (Bankr.D.Nev.1987); *Bowen Industries v. United States*, 61 B.R. 61 (W.D.Tex.1986).

The IRS asserts the Debtor is a "responsible person" who willfully failed to collect, account for, and/or pay over trust fund taxes.[4] Courts have considered numerous factors in determining whether a person should be considered a responsible person under § 6672, including the following:

(1) the ability to sign checks;

(2) the identity of officers, directors and shareholders;

(3) the identity of individuals who prepared the tax returns;

(4) the identity of individuals who hired and discharged employees;

(5) the identity of individuals who were in control of the financial affairs of the corporation; and

(6) the individual's entrepreneurial stake in the corporation.

*George v. United States, supra; Datlof v. United States, supra; I.R.S. v. Blais, supra; United States v. Davidson*, 558 F.Supp. 1048 (W.D.Mich.1982); *In re Clate, supra.*

It is important to note that the party subject to the penalty need not be an official of the delinquent corporation. A responsible person can include officers, employees, *and others* so connected with the corporation as to make them accountable for an illegal violation. *Anderson v. Unit-*

---

**4.** These items are to be read disjunctively. *Slodov v. United States,* 436 U.S. 238, 98 S.Ct. 1778,

56 L.Ed.2d 251 (1978).

*ed States,* 561 F.2d 162 (8th Cir.1977); *Adams v. United States,* 504 F.2d 73 (7th Cir.1974); *McCarty v. United States,* 437 F.2d 961, 194 Ct.Cl. 42 (1971); *Dudley v. United States, supra.* In fact, more than one person may be liable for the penalty, and employment is not a mandatory criterion for assessment. *George v. United States, supra; Roth v. United States,* 779 F.2d 1567 (11th Cir.1986); *Adams v. United States, supra; Turner v. United States,* 423 F.2d 448 (9th Cir.1970); *Datlof v. United States, supra.*

Several courts have held that the responsible person is that individual who has the final word as to payment of bills; however, the word "final" means significant, rather than exclusive control over disbursements. *Adams v. United States, supra; Dudley v. United States, supra; Turner v. United States, supra.*

■ In the case at bar Debtor operated as UDF's internal accounting department, utilizing fifty percent (50%) of its work force on the UDF account. Debtor also earned approximately $300,000.00 annually as a result of the services rendered for UDF. While it had no control over the hiring and firing of non-accounting employees, Debtor acted as the Financial Manager or Accounting Department Manager, and controlled the hiring and firing of those under its supervision. In point of fact, Debtor hired and fired one hundred percent (100%) of the individuals utilized by UDF in its accounting functions.

Debtor and Hayes maintained close daily contact, to discuss the financial status of UDF and to plan budgets. Debtor handled all payroll, including the calculation of all withholding taxes, and caused these checks to be distributed. Debtor's office was UDF's billing address, and most bills were paid directly from Debtor's offices. Debtor had full possession and control of signature facsimile stamps for UDF's President and Treasurer. These signature stamps were used to sign all checks within Debtor's control and were in fact used by Debtor's staff on a regular, routine basis. Debtor prepared and filed all of UDF's federal, state and local tax returns, and

signed same using the facsimile stamps. In fact, the signature card, utilized by the bank in opening UDF's account, was also facsimile stamped.

Debtor's only accountability to the Board was to make monthly financial presentations in which he described revenues and expenses for the *previous* month. When UDF began its downward spiral, the Board members turned to the Debtor for financial guidance, and accepted his suggested solutions, in deference to his greater expertise.

Without doubt it is clear to this Court that Debtor was a responsible party within the parameters of § 6672. However, such a determination is not conclusive; for not only must Debtor be responsible, it must also have willfully failed to perform its duties in relation to these taxes.

Willfulness does not require a finding of fraudulent intent or bad motive. It is simply a voluntary, conscious, and intentional act to prefer other creditors over the United States. *Barnett v. United States,* 594 F.2d 219 (9th Cir.1979); *Turner v. United States, supra; Monday v. United States, supra; Geiger v. United States,* 583 F.Supp. 1166 (D.Ariz.1984); *United States v. Davidson, supra; In re Clate, supra.* The requirement of willfulness is satisfied if the Court finds:

(1) that the responsible person was aware that the taxes were unpaid, and that he possessed the power to pay them with funds of the taxpayer entity, or

(2) that the responsible person consciously disregarded known information about the tax obligation and thus acted in "reckless disregard" of the fact that the taxes were due and would not be paid.

*George v. United States, supra; I.R.S. v. Blais, supra.*

In the instant case Debtor was aware that the taxes were due and owing; in fact, it was Debtor who advised UDF's Board of Directors that tax problems were arising. Debtor had sufficient power to direct the payment of those taxes. The UDF members were not sophisticated financiers; in

fact, they were dairy farmers who relied significantly upon Debtor's advice. Had Debtor suggested the prompt payment of the taxes and the workout of payment to other creditors, the Board would have easily acquiesced. Debtor and Hayes could have jointly made such a decision and reported same at the following monthly Board meeting, and no one would have seriously questioned their authority to do so.

Additionally, Debtor formed Professional Associates and raised $250,000.00 to be used expressly for quarterly trust fund taxes. Debtor had control over said funds and knew they were to be used only for taxes. The Board agreed with Debtor's plan of borrowing the $250,000.00 and using $3.5 million in equipment as collateral. Yet it is clear that Debtor used these funds, in substantial part, for payment of creditors other than the United States; and while doing so, Debtor continued to advise the Board members that all taxes were being paid. Debtor's actions showed a reckless disregard of the known tax obligations. The testimony reveals that Debtor was, without reservation, a responsible person who willfully failed to collect, account for, and/or pay over trust fund taxes.

■ The final issue before us concerns our jurisdiction to determine the tax liability of Quattrone, a non-debtor, third party to this proceeding. Quattrone argues that the Bankruptcy Court does have jurisdiction to hear and determine this action pursuant to 11 U.S.C. § 505(a)(1) which states:

**§ 505. Determination of tax liability.**

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

The IRS argues that Quattrone's reading of this statutory language is overbroad, and that this Court's authority to determine tax liability is limited to the bankruptcy estate. The IRS encourages this Court to qualify the language of § 505 by reading it in conjunction with the legislative history, as follows:

The House amendment authorizes the bankruptcy court to rule on the merits of any tax claim involving an unpaid tax, fine, or penalty relating to a tax, or any addition to a tax, *of the debtor or of the estate,* (emphasis added).

124 Cong.Rec. H11, 110–111 (daily ed. Sept. 28, 1978); S17, 426–428 (daily ed. Oct. 6, 1978).

Quattrone responds that the statute is clear and unambiguous on its face, precluding us from considering the legislative history.

The law is well-settled that if the words of a statute are sufficiently clear to provide only one interpretation, the statute must be given its plain meaning. Only if the statute is ambiguous, or if to read it plainly will produce absurd results, should a court look beyond the statutory language. *Perry v. Commerce Loan Company,* 383 U.S. 392, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966) *reh. denied* 384 U.S. 934, 86 S.Ct. 1441, 16 L.Ed.2d 535; *United States v. American Trucking Assns.,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); *United States v. Cavell,* 294 F.2d 12 (3rd Cir.1961). The Court in *American Trucking Assns.* stated the law quite eloquently:

There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words.

60 S.Ct. at 1063.

The earliest decisions on the question of whether the bankruptcy court could make

tax liability determinations of non-debtor, third parties held in the affirmative, finding the statute to be plain and unambiguous. *In re Jon Co., Inc.*, 30 B.R. 831 (D.Colo.1983); *In re Original Wild West Foods, Inc.*, 45 B.R. 202 (Bankr.W.D.Tex. 1984); *In re Datair Systems Corporation*, 37 B.R. 690 (Bankr.N.D.Ill.1983); *In re H & R Ice Company*, 24 B.R. 28 (Bankr.W.D. Mo.1982); *In re Major Dynamics, Inc.*, 14 B.R. 969 (Bankr.S.D.Calif.1981).

Later cases, primarily involving decisions by appellate courts, have held otherwise, finding that while the grant of jurisdiction to bankruptcy courts is broad, it cannot reasonably be extended to determining a non-debtor's *personal* tax liability. *United States v. Huckabee Auto Co., supra; United States v. Chatman Electrical Services, Inc.*, 82 B.R. 646 (D.D.C.1987); *Matter of East Wind Industries, Inc.*, 61 B.R. 408 (D.N.J.1986); *In re Booth Tow Services, Inc.*, 53 B.R. 1014 (W.D.Mo.1985); *Matter of Interstate Motor Freight System*, 62 B.R. 805 (Bankr.W.D.Mich.1986).

It is true that Congress was very liberal with its use of the word "any" in its codification of § 505(a). On its face § 505 does not limit the court to consideration of taxes assessed against the debtor or the estate. Nor does it limit our jurisdiction to creditors of the estate and/or principals of the debtor. In fact, by imposing a *literal* reading on § 505(a) this Court *could* determine the tax liability of debtor's counsel, the IRS agent who investigated this case, or any jurist on this bench. Without examining the legislative history, § 505 empowers the bankruptcy court to sit as a second tax court, allowing us to determine the tax liability of *any* person for *any* tax whatsoever. It is hard to imagine a result any more absurd. We must look to the legislative history, and same clearly limits our jurisdiction to those tax determinations involving the debtor or the estate. If our jurisdiction is to be extended to include Quattrone and others similarly situated, Congress will do so; we will not.

An appropriate Order will be issued.

## ORDER OF COURT

AND NOW at Pittsburgh in said District this 12th day of July, 1988 in accordance with foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that Debtor is a responsible person pursuant to 26 U.S. C. § 6672.

IT IS FURTHER ORDERED that this Court lacks jurisdiction to determine the tax liability of Phillip P. Quattrone, individually.