**In re QUATTRONE ACCOUNTANTS, INC., et al., Bankruptcy Appellants.**

**Civ. A. No. 88–2065.**

United States District Court, W.D. Pennsylvania.

May 2, 1989.

---

Paul Yagelski, Pittsburgh, Pa. for debtors, Quattrone Accountants, Inc.

William S. Rose, Jr., Tax Div., U.S. Dept. of Justice, Washington, D.C. I.R.S.

Craig R. McKay, Asst. U.S. Atty.

## MEMORANDUM AND ORDER

McCUNE, Senior District Judge.

We consider an appeal filed by a debtor from an order of the bankruptcy court which held that the debtor, Quattrone accountants, Inc., (debtor) was a "responsible person", pursuant to the Internal Revenue Code, 26 U.S.C. § 6672, such that it was liable for delinquent federal employment taxes incurred by the United Dairy Farmers Cooperative Association (UDF). The bankruptcy court also held that it did not have jurisdiction to determine the tax liability of a principal of the debtor, Phillip P. Quattrone, an individual who was not in bankruptcy, 88 B.R. 713.

### Factual Background

As determined by the bankruptcy court, UDF was a farmers' cooperative corporation which had been engaged in the production and marketing of milk and cheese products in western Pennsylvania and surrounding areas. It was formed in 1965 and was owned and operated by member-volunteers. UDF essentially collected raw milk from farms, processed the milk for consumption by the public and marketed the processed milk in its own stores. As UDF prospered, it found the need for professional accounting services, and hired the debtor, a corporation, in the late 1960's to perform such services.

UDF's president, Ernest Hayes, ran the day-to-day operations from the inception of the cooperative through 1981. Hayes' responsibilities were delegated to him by the UDF Board of Directors. Hayes and Phillip Quattrone, part owner and principal officer of Quattrone Accountants, Inc., had frequent contact to discuss UDF's finances, as debtor handled all of the accounting and financial affairs of UDF. Debtor was responsible for calculating payroll and distributing paychecks in all of the UDF retail outlets. All of UDF's bills were sent directly to debtor's office and debtor automatically paid all of the monthly bills by use of a signature facsimile stamp. For special debts, outside the standard monthly payments, the decision to pay and when was made by debtor and Hayes jointly.

Debtor was also responsible for the preparation and filing of UDF's federal, state, and local tax returns, and was authorized to procure and manage all of UDF's loans.

UDF's Board of Directors held monthly meetings at which the debtor made complete financial presentations. The Board was advised of the previous month's financial position, revenues and expenses. Further, the Board was advised of bills which debtor determined to pay and debts it left outstanding.

UDF operated with three checking accounts. One was a milk account which was used for the payment to milk producers. One account was a petty-cash account used for disbursements of less than $1,000. The third account was used for deposits of revenues and to pay monthly expenses and the check book for this account was kept by debtor at its offices. The checks which were used for the monthly expenses were not signed by debtor, rather they were signed by a facsimile stamp of the signature of Hayes and the treasurer, Helen Zitney.

During 1980, UDF encountered problems with the Department of Agriculture (USDA). A dispute developed over the dates of payment by UDF to its milk suppliers. UDF was required to modify its payment plan to the milk suppliers, which caused many payments to other creditors to be untimely. Shortly thereafter, Pittsburgh National Bank "called" an $800,-000.00 loan and froze UDF's assets. Debtor advised the members that the loan could be paid if UDF borrowed two-thirds of one month's milk receipts from the members. The members agreed to the loan arrangement, seeing no other means to obtain release of their accounts. The USDA advised UDF that the members' loan would be characterized as an assessment. This resulted in a lawsuit brought against UDF by the USDA in which the USDA obtained a $1.2 million judgment.

UDF evidently attempted to continue operations despite a serious cash flow prob-

lem. At this same time, the IRS began an investigation because UDF was $50,000.00 overdue on its federal withholding taxes, Federal Insurance Contribution Act taxes, and Federal Unemployment Tax Act taxes. The UDF Board of Directors called a special meeting to determine how to proceed. The farmers could not use their milk receipts to assist in paying the delinquent taxes and UDF was without sufficient funds. UDF could not get bank financing due to the outstanding $1.2 million judgment. The Board turned to debtor for assistance and guidance. Debtor formed a group of investors, called Professional Associates, who loaned $250,000.00 to UDF specifically to pay presently due taxes and to pay withholding taxes anticipated for the following year. In return for this loan, UDF gave Professional Associates $3.5 million of equipment as collateral, while continuing to use the equipment under a lease-back agreement. Debtor was responsible for payment of these taxes, and the UDF Board of Directors relied on debtor's expertise in clearing up the tax delinquency.

During the course of the next year the debtor was continuously questioned about the tax deficiency and whether payments were being made to satisfy it. Debtor consistently reassured the Board that the required payments had been made. In the fall of 1981, the Board directed debtor to produce documents which verified the tax payments. When debtor's deposit receipts did not correspond to the amounts due, debtor was fired. In October of 1982, UDF filed a voluntary petition in bankruptcy under Chapter 11 of the 1978 Bankruptcy Code, and listed, in its schedule of debts, outstanding withholding taxes for the periods ending June 30, 1981 and September 9, 1981.

In an effort to collect at least a portion of the unpaid federal employment taxes of UDF, the IRS proposed and made assessments against several entities pursuant to 26 U.S.C. § 6672. Included among the individuals so assessed were Hayes and Phillip Quattrone.[1] In addition to these individu-

---

1. The IRS has sued Hayes and Quattrone at No. 88–2672 seeking to establish liability under 26 U.S.C. § 6672.

als, the IRS also assessed the debtor as a person responsible for collecting, accounting for, and paying over UDF's employment taxes pursuant to 26 U.S.C. § 6672. Debtor subsequently filed its own petition for reorganization under Chapter 11. The assessments now total $85,368.82, plus interest.

On May 23, 1988, a hearing was held before the bankruptcy court. On July 12, 1988, the court filed its memorandum opinion and order holding that debtor was a responsible person under § 6672 and that it did not have jurisdiction to determine the personal tax liability of Phillip Quattrone, who was not in bankruptcy. For the reasons stated herein, we will affirm the order of the bankruptcy court in all respects.

### Discussion

It is well settled that the proper standard of review applied to findings of fact of the bankruptcy court is the clearly erroneous standard. *In re Sharon Steel Corp.,* 871 F.2d 1217, 1222 (3d Cir.1989). Because we conclude that the bankruptcy court's findings of fact are not clearly erroneous, we will adopt those findings. We must conduct plenary review of conclusions of law and break down mixed questions of law and fact, applying the appropriate standard to each component. *Id.* (citing *Resyn Corp. v. United States,* 851 F.2d 660, 664 (3d Cir.1988); *In re Jersey City Medical Center,* 817 F.2d 1055, 1059 (3d Cir.1987); *Ram Constr. Co. Inc. v. American States Insurance Co.,* 749 F.2d 1049, 1052–53 (3d Cir.1984); *University Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 101–02 (3d Cir.1981)).

█ The first issue we address is whether the bankruptcy court had subject matter jurisdiction to determine the tax liability of Phillip P. Quattrone, a non-debtor third party. The bankruptcy court examined the legislative history of § 505(a)(1) of the Bankruptcy Code in holding that its jurisdiction was limited to tax determinations involving the debtor or the bankruptcy estate. Section 505(a)(1) provides:

§ 505. Determination of tax liability.

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

Quattrone argues on appeal that the bankruptcy court failed to take into consideration the provisions of 28 U.S.C. § 1334(b), which provides:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district court, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in *or related to cases under Title 11.* (Emphasis added).

Quattrone argues that § 1334 gives the bankruptcy court derivative jurisdiction over non-debtor tax questions which are related to the bankruptcy estate. Thus, our inquiry is whether or not Quattrone's individual tax liability is related to the bankruptcy estate.

Our Court of Appeals for the Third Circuit has held that the test for determining whether or not a civil proceeding is related to a bankruptcy estate is whether the outcome of that proceeding could have any conceivable effect on the administration of the bankruptcy estate. *In re Bobroff,* 766 F.2d 797, 802 (3d Cir.1985). An action is related to the bankruptcy if the outcome could have any impact upon the handling and administration of the bankruptcy estate, and if the outcome could "alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)," *Id.* The fact that there may be common issues of fact between a civil proceeding involving Phillip Quattrone's tax liability and the bankruptcy estate of Quattrone Accountants, Inc. does not necessarily require the adjudication of Quattrone's individual liability within the scope of §§ 505(a) and 1334.

We agree with the bankruptcy court's interpretation of § 505(a). Expanding the

power of the bankruptcy court to determine the tax liability of any person or entity not in bankruptcy is not favored. While the bankruptcy court might assume jurisdiction to determine the tax liability of both the debtor and a person who controlled the debtor according to some authority cited by the debtor, the better view is that such jurisdiction should not be assumed. *In Re Morysville Body Works, Inc.*, 89 B.R. 440, 442–445 (Bankr.E.D.Pa. 1988); *United States v. Huckabee Auto Co.*, 783 F.2d 1546 (11th Cir.1986).

Sections 1334 and 505(a) do not preclude the bankruptcy court from assuming jurisdiction over non-debtor third parties. The language of these two sections does not, on its face, limit the jurisdiction of the bankruptcy court to debtors alone. However, we are persuaded by the reasoning of *In Re Morysville Body Works, Inc.* that Congress did not intend to empower bankruptcy courts to consider any tax whatsoever, on whomever imposed, even though such tax liability might have some conceivable effect on the administration of the bankruptcy estate. To do so would, in effect, burden the bankruptcy courts with tax issues that are better suited for the tax courts.

The next issue is whether or not the debtor was a "responsible person" pursuant to § 6672 such that a penalty assessment could be levied against it. Section 6672 provides in pertinent part:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

Two issues arise with regard to liability under § 6672; (1) is the person against whom an assessment is made a person responsible for collecting and paying over the tax; and (2) did the responsible person willfully fail to collect and pay over the tax. Both of these inquiries must be answered in the affirmative in order for liability to attach.

■ Section 6671 of the Internal Revenue Code provides rules for the application of penalty assessments, including those penalties assessed under § 6672. The term "person" is defined in § 6671:

(b) Person defined—The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

We have held that the language of Sections 6671 and 6672 is broad enough to reach corporations and other artificial entities. The § 6671 definition of "person" is not restricted to the classes of persons specifically listed, but is construed to include an individual, trust, estate, partnership, or corporation. *United States v. North Side Deposit Bank*, 569 F.Supp. 948, 960 (W.D.Pa. 1983). Thus, the debtor can be liable as a "responsible person" if it was, in fact, responsible for collecting and paying over the tax in question and if it willfully failed to do so.

■ The government argues that the debtor is a responsible person who willfully failed to collect, account for, and/or pay over the federal employment taxes. We consider a number of factors in deciding whether debtor was a responsible person under § 6672, including:

(1) the ability to sign checks;

(2) the identity of the individuals who signed the Company's tax returns;

(3) the identity of individuals who were in control of the Company's financial affairs;

(4) the identity of individuals who hired and fired employees;

(5) the identity of officers, directors, and shareholders;

(6) the individual's entrepreneurial stake in the company.

*George v. United States*, 819 F.2d 1008, 1011 (11th Cir.1987). The party subject to the assessment need not be an official,

officer, or shareholder of the delinquent corporation. As long as the party assessed had a significant connection to the corporation as to make it liable for a violation, that party can be held liable under § 6672. Several courts have held that a responsible person is any person or entity who was associated with the delinquent corporation in such a manner that such person or entity had the power to see that the taxes were paid, to make final decisions regarding disbursement of funds, or to determine which creditors were to be paid and when they were to be paid. *Commonwealth Nat. Bank of Dallas v. United States,* 665 F.2d 743, 751 (5th Cir.1982); *Anderson v. United States,* 561 F.2d 162 (8th Cir.1977); *Donelan Phelps & Co., Inc. v. United States,* 681 F.Supp. 615, 619 (E.D.Mo.1987).

The bankruptcy court found that the Debtor operated as UDF's internal accounting department, and it handled all payroll, including the calculation of all withholding taxes. Further, Debtor's office was UDF's billing address and most bills were paid from Debtor's office. Debtor prepared and filed all of UDF's federal, state and local tax returns, and signed these returns by using the facsimile stamps. Debtor had full possession and control of the facsimile stamps which it used to pay monthly expenses.

When UDF ran into financial hardship, it turned to Debtor for guidance and advice, deferred to Debtor's expertise and eventually accepted its suggested solutions. Debtor vigorously argues that it was not a responsible person within the meaning of § 6672. Debtor claims that it was nothing more than the accountant which did the detail work, that the UDF Board of Directors and the President made all decisions regarding disbursements and that the Board had complete control over the financial affairs of the Company. We must accept the bankruptcy judge's findings of fact, however, unless they are clearly erroneous. Debtor argues that the bankruptcy judge's factual findings are not supported by the record. We have reviewed the record carefully and conclude that the factual findings of the bankruptcy court are supported in the record.

Once it is established that a taxpayer is a responsible person, the burden shifts to the taxpayer to demonstrate that he/she did not willfully fail to remit employee withholding taxes in order to escape liability. *Thibodeau v. United States,* 828 F.2d 1499, 1505 (11th Cir.1987); *Mazo v. United States,* 591 F.2d 1151, 1155 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed. 2d 54 (1979). Section 6672 precludes the imposition of liability without fault. *Slodov v. United States,* 436 U.S. 238, 255, 98 S.Ct. 1778, 1789, 56 L.Ed.2d 251 (1978). Debtor argues that the UDF Board of Directors and President Hayes knew that the withholding taxes were accruing and owing to the IRS, and it was the UDF management who made the decision not to pay the withholding taxes. Debtor also maintains that it insisted that tax returns be filed, but it had no authority to pay the taxes because Hayes and the Board had complete control over the finances. Again, we accept the bankruptcy judge's findings.

The issue is whether or not Debtor willfully failed to pay the withholding taxes, given the factual findings of the bankruptcy court. The bankruptcy court found that the Debtor's only accountability to the management was to make monthly financial presentations and that Debtor had a wide range of discretion in paying monthly expenses. The court also determined that the Debtor knew that the trust fund taxes were due and owing and that it formed Professional Associates in order to raise revenue to be used expressly for quarterly trust fund payments. Debtor had control over these funds and used them to pay creditors other than the United States.

The willfulness requirement is met if we find:

(1) the responsible person had knowledge of payments to creditors other than the government, or

(2) the responsible person showed a reckless disregard of a known or obvious risk that the taxes would not be paid.

*George v. United States, supra.* Applying the facts as found by the bankruptcy judge, it is clear Debtor willfully failed to

collect and pay over trust fund taxes. Debtor had knowledge that payments were being made to creditors other than the government at the time the trust fund taxes were due and owing. Furthermore, Debtor was entrusted with certain funds raised by Professional Associates which were to be used specifically for the payment of trust fund taxes. However, these payments were not made. Debtor's argument that the UDF Board and President Hayes had complete control over the finances and made all decisions with regard to disbursements, including the payment of trusts fund taxes is simply not supported in the record. The order of the bankruptcy court is affirmed.